ADMINISTRATORS OF SOLOMON DOWNER *v.* FREDERICK SMITH.

*Covenant.     Taxes.     Deed.     Tenancy in Common.     Damages.
Agency.*

Where a piece of land is sold for taxes assessed thereon, and the same is purchased at the tax sale by, and conveyed to, one of the tenants in common thereof, he acquires no right, title or interest in or to the moiety which belonged to his co-tenant.

The taxes are in the nature of an incumbrance on the land, created by statute, and in making payment thereof even in this way a tenant in common acts but in discharge of duty, and is regarded in law as the agent of the co-tenant to the extent of the co-tenant's share of the land.

Therefore if such tenant subsequently convey the whole land by a warranty deed containing the usual covenant of seizin, he becomes liable for a breach of his covenant as to the moiety of the land owned by his co-tenant, and the damages would be one-half of the consideration paid for the land and interest.

THIS was an action of covenant. The declaration is sufficiently referred to in the opinion. The case was tried in the county court, upon the following agreed case, December Term, 1865, PIERPOINT, Ch. J., presiding.

John Wood, (who had good title to the premises,) conveyed the same to George N. Farewell by deed, dated, acknowledged, and recorded in the land records of Ripton, on the        day of       , A. D. 18  .  Farewell conveyed the same premises to the defendant and one Lyman Severance by deed of quit-claim, dated the 2d day of January, A. D. 1851, duly acknowledged by Farewell on the 3d day of January, A. D. 1852, and recorded in the land records of Ripton, on the 14th day of June, A. D. 1852. Severance conveyed one undivided half of the same premises to Rufus Goss, by deed of quit-claim, dated and acknowledged the 12th day of June, A. D. 1852, and recorded in said land records on the 14th day of June, A. D. 1852. At a public auction, holden at said Ripton, on the 3d day of October, A. D. 1851, the same premises were sold to the defendant by Samuel H. Hendrick, then first constable of the town of Ripton, as non-resident lands, for the non-payment of taxes duly assessed thereon. And the said Samuel H. Hendrick, as such constable, conveyed the same premises, pursuant to said sale, to the defendant, by a constable's deed, dated and acknowledged on the 14th day of December, A. D. 1852, and recorded in said land records on the

31st day of August, A. D. 1853. Lyman Severance conveyed his interest in said premises to the defendant by deed of quit-claim, dated, acknowledged and recorded, on the 26th day of October, A. D. 1854. The defendant conveyed the same premises to Solomon Downer, by deed of warranty, dated and acknowledged the 12th day of October, A. D. 1854, and recorded in said land records, on the 15th day of December, A. D. 1854. The said Downer has since deceased, and the plaintiffs, before the commencement of this suit, were duly and legally appointed administrators upon his estate.

The court rendered judgment, *pro forma*, for the plaintiffs with costs,—to which the defendant excepted.

*Stewart & Foot*, for the defendant, maintained that the plaintiffs' right of recovery depended wholly upon the invalidity of the title derived by the defendant under the constable's deed.

*A. P. Tupper*, for the plaintiffs.

The deed from Farewell to Smith and Severance was a quit-claim. If the title passed at the date of the deed the only effect of the tax sale to Smith would be to disincumber the land. It could not have the effect to deprive Severance of his interest therein. One tenant in common cannot by virtue of a sale of the land held in common to him for taxes, claim and take the whole land to himself to the exclusion of his co-tenant. The effect of the sale being to discharge an incumbrance only, and not to convey title. *Barnard* v. *Pope*, 14 Mass. 434; *Brown* v. *Wood*, 17 Mass. 68; *Shumway* v. *Holbrook*, 1 Pick. 144; *Wiswall* v. *Wilkins*, 5 Vt. 87.

The deed from Severance to Smith of his interest so late as October, 1854, shows that down to that time he recognized the title to an undivided half of the land in Severance. The interest of Smith by virtue of the tax sale was merged in the title of Smith and Severance. The deeds show that when Smith by warranty deed conveyed to Downer, the title to the land was in Smith and Goss, Severance having deeded his undivided half to Goss. Consequently the covenant of warranty and seizin were broken. The covenant of seizin imports a covenant of title, and to satisfy it the grantor must have the whole estate in quantity and quality. *Mills* v. *Catlin*, 22 Vt. 98; *Richardson* v. *Dorr*, 5 Vt. 9.

The rule of damages for the breach of the covenant of seizin is

the consideration paid with interest. *Catlin* v. *Hurlburt*, 3 Vt. 403 ; *Richardson* v. *Dorr*, 5 Vt. 9 ; *Blake* v. *Burnham*, 29 Vt. 437.

The opinion of the court was delivered by

WILSON, J. The plaintiff's declaration alleges that the defendant conveyed certain land to the plaintiffs' intestate, by deed dated October 12th, 1854; that the deed contains the usual covenants of seizin and against incumbrances. The first count in the declaration alleges, as breach of the covenant against incumbrances, that the defendant's grantor, (one Lyman Severance), on the 26th day of October, 1854, at the time of the execution of his deed to the defendant, purporting to convey the title of the land therein described to the defendant, was neither seized nor possessed of the land, that he had no title to it, and that Severance, prior to that time, viz : on the 12th day of June, 1852, had conveyed the premises to one Rufus Goss. The 2d count alleges a breach of the covenant of seizin in this, that at the time of the execution of the deed by the defendant to the plaintiffs' intestate, one Rufus Goss was the owner of the land. The main question is whether Lyman Severance, on the 12th day of June, 1852, at the time of the execution of his deed to Goss, had a valid title to an undivided moiety of the land described in the plaintiff's declaration. It is conceded that George N. Farewell, on the 2d day of January, 1851, owned the land, and that by his quit-claim deed of that date, conveyed it to the defendant and Lyman Severance, which deed was duly acknowledged by Farewell, January 3d, 1852, and recorded June 14th, 1852. It is evident, under our statute, that neither an acknowledgment of the deed by Farewell, nor its record, was essential to its validity as against the grantor and his heirs. That deed conveyed the land to the defendant and Lyman Severance as tenants in common. On the 12th day of Oct., 1854, at the time the defendant executed his deed to the plaintiffs' intestate, Rufus Goss held the title to one undivided moiety of the premises under the conveyance from Severance, of June 12th, 1852, unless the title of Goss was defeated by the sale of the land to defendant for taxes, made October 3d, 1851, and the constable's deed to defendant executed in pursuance of that tax sale on the 14th day of December, 1852. It is claimed by the defendant that the right of the plaintiff to recover in this case depends wholly on the invalidity of the title derived to the defendant

by the constable's deed. But we think it wholly immaterial whether the constable's proceedings were valid or invalid. The defendant and Severance were, at the time the constable sold the land to defendant for the payment of the taxes, tenants in common of the land, and at the time the constable executed his deed to the defendant in pursuance of the tax sale, Goss and the defendant owned the land as tenants in common. The land was holden under the statute for the payment of taxes assessed thereon against Wood, a former owner of the premises. The unity of possession, existing in a tenancy in common, would imply that the defendant was in possession of the land, managing and carrying it on to the best advantage for those interested, and guarding it for himself and his co-tenant against forfeiture. It became the duty of the defendant to pay, and he did pay those taxes in order to save his own moiety of the land, and by procuring a discharge of the lien on the land, created by the taxes assessed thereon, the whole land was redeemed, and his co-tenant became liable to account to the defendant for one-half the amount thus paid. The taxes were in the nature of an incumbrance on the land created by statute. The defendant and Severance took the conveyance from Farewell with, at least, an implied understanding that the land was holden for the payment of all taxes assessed thereon and remaining unpaid. The defendant, by paying the taxes, discharged his duty and his own legal liability for the benefit of himself and his co-tenant. The whole defence to the plaintiffs' right of recovery rests upon the defendant's proposition that, by the sale of the land to the defendant for the payment of the taxes, and by the constable's deed of the land to the defendant, he derived title to the whole land, and thereby the prior title of the defendant and Severance, as tenants in common, under the Farewell deed, was defeated. But, we think, no such result follows the proceedings under which the defendant claims to have derived title to the whole premises. It is apparent, upon the facts submitted that no such result was contemplated by the defendant at the time of the tax sale. Farewell executed his deed (except its acknowledgment) on the 2d day of January, 1851. The sale of the land for the payment of the taxes was made on the 3d day of October, 1851. The defendant and Severance then claimed title under the deed from Farewell; and on the 3d day of January, 1852, the

defendant and Severance, or one of them, procured Farewell to acknowledge his deed. On the 12th day of June, 1852, Severance conveyed his undivided half of the land to Goss, at which time the Farewell deed had not been recorded; but it appears that, on the 14th day of June, 1852, the deed from Severance to Goss, and the deed from Farewell to the defendant and Severance, were duly recorded. We may reasonably infer that the Farewell deed was acknowledged by him and recorded by the procurement or consent of the defendant; and it does not appear that the defendant, while Severance was his co-tenant, questioned the title of Severance or his right to sell or convey to Goss. It does not appear that either Severance or Goss had any notice of the sale of the land for taxes until the constable's deed was recorded, which was more than a year after Severance conveyed his interest to Goss—we think it would hardly be denied that the defendant was required to act in good faith so far as his co-tenant was interested. The defendant in making payment of the taxes, might properly be treated as the agent of Severance to the extent of Severance's share of them, and the law would imply such agency so long as the relation of tenants in common should exist. It would not, we think, be insisted that an agent or administrator, whose duty it was to pay the taxes assessed on property of which he had the care and management, could, as against his principal or the estate whom he represented, derive to himself a valid title to the property, by suffering it to be sold for the taxes assessed thereon, and becoming the purchaser at such sale. It is clear that the constable's deed conveyed to the defendant no right, title or interest in or to the moiety of the land which belonged to his co-tenant Goss. That deed is wholly inoperative, except as a release or discharge of the taxes assessed on the land, by which it was then incumbered.

The quit-claim deed from Severance to the defendant, under date of October 26, 1854, conveyed no right or title to the defendant, and for the obvious reason that Severance, at that time, had no title to, nor interest in, the premises. Whatever interest or benefit Severance had derived from the constable's deed to the defendant enured to the benefit of Goss.

The title of Goss, derived from Severance, under his deed of June 12th, 1852, constituted a breach of the defendant's covenant of seizin,

and the only remaining question relates to the rule of damages. The case shows that, at the time of the execution of the deed by the defendant to Downer, the defendant, and Goss, were tenants in common of the land described in the defendant's deed. The only unity required in a tenancy in common is that of possession. The defendant, at the time he executed his deed to Downer, owned one equal undivided moiety of the land. He then had the same estate in one half of the land which his covenant implies he had in the whole. At that time the defendant was seized, in law and in fact, of one equal undivided half of the land mentioned in his deed; and in one-half of the land he had the estate which his covenant calls for, and his covenant is broken only as to the moiety of the land owned by Goss. We think the rule of damages should be one-half of the consideration paid for the land and interest. The judgment of the county court is affirmed. By agreement of the parties the case is remanded to the county court for assessment of damages.