■ PATTEN OF NEW YORK CORPORATION, Respondent, v RICHARD P. GEOFFRION et al., Appellants. [598 NYS2d 355] —Crew III, J. Appeals (transferred to this Court by order of the Appellate Division, Second Department) (1) from an order of the Supreme Court (Miller, J.), entered November 9, 1991 in Orange County, which granted plaintiff's motion for summary judgment, and (2) from the judgment entered thereon.

On or about November 24, 1987, the parties entered into a contract whereby plaintiff agreed to purchase from defendants approximately 117 acres of land located in the Town of Warwick, Orange County, for $1.5 million. At the time the contract was executed, plaintiff tendered a down payment in the amount of $150,000, to be held in escrow by defendants'

attorney,* and thereafter paid additional sums totaling $10,240. The closing was set for January 9, 1989 but prior thereto, on or about December 19, 1988, plaintiff raised two objections to title—namely, an utility easement and two burial reservations. The parties were unable to resolve the dispute regarding the marketability and insurability of defendants' title, and plaintiff ultimately commenced this action seeking, *inter alia,* to recover the payments made under the contract. Following joinder of issue, plaintiff moved for summary judgment. Supreme Court granted plaintiff's motion, finding that defendants had failed to deliver marketable and insurable title as required by the contract. This appeal by defendants followed.

We affirm. The contract provided that defendants were to convey "the fee simple of the * * * premises, free of all encumbrances, except as [stated therein]", and that defendants were required to give, and plaintiff was required to accept, "a title such as any reputable title company, subject to the exceptions in this contract provided, [would] approve and insure". The contract further provided that the property was to be conveyed subject to, *inter alia,* "[a]ny state of facts an accurate survey may show, provided title is not thereby rendered unmarketable [and] [c]ovenants and restrictions, of record, if any, provided the same does not interfere with or prohibit the Purchaser's intended use". It appears that plaintiff intended to develop the property for residential purposes.

We have previously held that where, as here, "the contract requires such title as a title company will insure and also requires conveyance of a fee simple free of all encumbrances save those specified in the contract, the buyer is entitled to insist on both insurable title and title which is free of all encumbrances save those specified in the contract" *(Hudson-Port Ewen Assocs. v Chien Kuo,* 165 AD2d 301, 304-305, *affd* 78 NY2d 944; *cf., Creative Living v Steinhauser,* 78 Misc 2d 29, 31, *affd* 47 AD2d 598, *lv denied* 36 NY2d 643). Thus, under the terms of the contract at issue here, defendants were required to tender both marketable and insurable title.

Initially, we reject defendants' assertion that plaintiff waived any objections to title. Mere knowledge of the utility easement did not defeat plaintiff's right to object to the marketability of title *(see generally, Whitman v Larson,* 172 AD2d 968, 970; *Tanners Realty Corp. v Ruggerio,* 111 AD2d 974, 975, *lv denied* 65 NY2d 611; *but cf., Ilemar Corp. v*

---

* The contract was subsequently modified to provide for the release of this sum to defendants.

*Krochmal,* 58 AD2d 853, 855, *affd* 44 NY2d 702). Turning to the merits, marketable title traditionally has been defined as "a good title, one that is free and clear of encumbrances or material defects, one reasonably certain not to be called into question" (91 NY Jur 2d, Real Property Sales and Exchanges, § 71, at 164); in short, a title that is free from reasonable doubt and is readily subject to resale *(see, Laba v Carey,* 29 NY2d 302, 311). Even assuming that the utility easement, which apparently runs along State Route 94 and borders a portion of the property's perimeter, does not constitute a material defect in defendants' title *(but cf., Rhodes v Astro-Pac, Inc.,* 41 NY2d 919; *Atlas Realty v Ostrofsky,* 56 Misc 2d 787), the existence of the unlocated burial reservations, which were not excepted from the contract, surely would inhibit development of the property for residential use and, thus, renders defendants' title unmarketable.

Moreover, the record indicates that defendants failed to tender insurable title as well. Under the terms of the contract, defendants were required to tender title such as any reputable title company, subject to the exceptions noted in the contract, would approve and insure. Although defendants' title insurance company was apparently willing to insure the title without an exception for the burial reservations, the company was unwilling to provide insurance without an exception for, *inter alia,* the utility easement. Thus, defendants' failed to fulfill their obligation to furnish insurable title in accordance with the contract terms *(see, Kopp v Barnes,* 10 AD2d 532; *compare, Laba v Carey,* 29 NY2d 302, *supra; Westhab, Inc. v McBain,* 143 AD2d 1006; *DeJong v Mandelbaum,* 122 AD2d 772).

Mikoll, J. P., Yesawich Jr. and Mercure, JJ., concur. Ordered that the order and judgment are affirmed, without costs.